**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DALE DANIEL, JAQUISHA MCCALLUM, KATHERINE MCDANIELS, LEONYE MCCALLA, MAXINE MILLS, MICHAEL HOLMES, and SHANNON ANDREAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AON PLC, ADMINISTRATIVE COMMITTEE FOR AON PLC, and JOHN DOES 1-10,<br><br>Defendants. | **CIVIL ACTION NO.:** |

**CLASS ACTION COMPLAINT**

Plaintiffs, Dale Daniel, JaQuisha McCallum, Katherine McDaniels, Leonye McCalla, Maxine Mills Michael Holmes and Shannon Andreas ("Plaintiffs"), by and through their attorneys, on behalf of the Aon Benefit Plan (the "Plan")[1] themselves and all others similarly situated, state and allege as follows:

## I. INTRODUCTION

1. This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, Aon plc ("Aon" or the "Company") and the Administrative Committee for Aon plc (the "Committee") for breaches of their fiduciary duties.

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

2. Plaintiffs bring this action to redress prohibited transactions and self-dealing in violation of 29 U.S.C. § 1106(b) by Defendants, which acted as a fiduciary to the Plan in connection with the selection, marketing, and placement of voluntary benefits and the receipt of compensation derived from participant-paid premiums. As explained below, Defendants exercised fiduciary authority to select and maintain insurance arrangements for the Plan from which Aon itself received millions of dollars of compensation; Defendants participated in determining the amount and structure of that compensation.

3. The Plan is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1002(1), that offered voluntary benefit products to Plan participants, including but not limited to health, vision, dental, long-term disability, life insurance, legal, life insurance, supplemental disability, long term care, and critical illness.

4. In the voluntary benefits market, insurance carriers do not set premium rates independently and then separately negotiate broker compensation.[2] Rather, the process works in reverse. Aon, as the broker, specifies the commission structure. That structure can be a "heaped" commission (a high first-year payout followed by lower renewal rates) or a "level" commission (a consistent percentage paid every year).[3]

5. As the broker, Aon also sets the benefits administration fee, an additional cost that compensates Aon for consulting, providing ongoing services, additional commission or compensation and for enrollment firms (specialized third-party companies that manage

---

[2] *See* Mployer Team, *Insurance Broker vs. Carrier* (Updated August 14, 2023), https://mployeradvisor.com/blog/insurance-broker-vs-carrier ("this commission is built into the premiums paid by policyholders every month. Thus, it's not a separate payment, but included in the price of the policy purchased through the broker.").

[3] *See* Trevor & Heather Garbers, The Commission Conundrum (March 2023), https://issuu.com/voluntary-advantage/docs/vb_voice_-_march_2023/6?e=8&o=1.

communication, education, technology and sign-up process) for technology platforms and enrollment support services.

6. The insurance carrier will include the commission and administration fee into the premium rate structure that participants pay. In doing so, the insurance carrier prices the product to achieve its target profitability after accounting for any commissions, the administration fees, its own administrative costs, and its profit margin. Thus, in the instant case, the participants' premium payments are a direct function of Aon's compensation demands. When Aon demands more, the carrier charges more, and participants pay more.

7. Defendants, while acting with respect to the management or disposition of Plan assets, engaged in self-dealing by setting, collecting and retaining commission compensation and administration fees out of Plan assets, in contravention of ERISA.

8. Defendants failed to avoid self-dealing and conflicts of interest, and failed to ensure that any compensation received from dealing with the Plan complied with ERISA's strict prohibitions under 29 U.S.C. § 1106(b), including by obtaining appropriate authorization and ensuring that any compensation did not result from Defendants acting in any transaction involving the Plan on behalf of a party whose interests were adverse to those of the Plan and its participants.

9. Aon's compensation structure and receipt of commissions and administration fees influenced or had the tendency to influence its recommendations and actions regarding the selection, marketing, and placement of voluntary benefits, and the level and cost of those benefits to participants.

10. Plaintiffs, on behalf of themselves, the Plan, and the class of similarly situated Plan participants, seek equitable relief including restitution and disgorgement of ill-gotten commissions and profits, pursuant to 29 U.S.C. § 1132(a).

11. Based on this conduct, Plaintiffs assert claims against Defendant for engaging in ERISA's prohibited transactions (Count I), breach of the fiduciary duty of loyalty (Count II) and failure to monitor (Count III).

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

13. This Court has personal jurisdiction over Defendants because Defendants transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Plan is administered in this District, the alleged breaches took place in this District, and/or Defendants may be found in or transacts business in this District.

## III. PARTIES

### **Plaintiffs**

15. Plaintiff Dale Daniel ("Daniel") resides in Altamonte Spring, Florida. Plaintiff Daniel is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendants, including medical, vision, accident, critical illness, dependent life insurance and long-term disability.

16. Plaintiff JaQuisha McCallum ("McCallum") resides in Forest Park, Georgia. Plaintiff McCallum is a participant and beneficiary of the Plan, and paid premiums for voluntary

benefit products placed and administered with the involvement of Defendants, including medical, dental, vision, accident, life insurance, long-term care, and long-term disability.

17. Plaintiff Katherine McDaniels ("McDaniels") resides in Sorrento, Florida. Plaintiff McDaniels is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendants, including medical, accidental death & dismemberment, life insurance, legal services, long-term disability and supplemental accidental death & dismemberment.

18. Plaintiff Leonye McCalla ("McCalla") resides in Fresh Meadows, New York. Plaintiff McCalla is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendants, including medical, dental, vision, and critical illness.

19. Plaintiff Maxine Mills ("Mills") resides in Brentwood, Maryland. Plaintiff Mills is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendants, including medical, dental, vision, accident, and long-term disability.

20. Plaintiff Michael Holmes ("Holmes") resides in Portland, Maine. Plaintiff Holmes is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendants, including medical, dental, vision, accidental death & dismemberment, critical illness, accident, long-term disability, legal and life insurance.

21. Plaintiff Shannon Andreas ("Andreas") resides in Lancaster, Pennsylvania. Plaintiff Andreas is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit

products placed and administered with the involvement of Defendants, including medical, dental, vision, accident, critical illness and long-term disability.

22. Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan, paid premiums for voluntary benefit products, and were injured by Defendants' unlawful conduct.

23. Plaintiffs did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendant**

***Company Defendant***

24. Aon Corporation is the sponsor and named fiduciary of the Plan with a principal place of business at 200 E. Randolph Street, Chicago, Illinois. *See* 2024 Form 5500 for the Plan, at 1-2.[4] The Company provides risk management, insurance and reinsurance brokerage, and human resources consulting and outsourcing.

25. During the putative Class Period, the Company is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it had control over Plan management and/or authority or control over management or disposition of Plan assets.

26. At all relevant times, Aon acted as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A) with respect to the Plan and/or Plan assets by, among other things, exercising discretionary authority or control over Plan management or assets, and/or having discretionary authority or responsibility in Plan management and administration.

[4] The address identified in the Form 5500s for the Plan is a P.O. Box.

27. Aon occupied both sides of the voluntary benefits transactions. In its capacity as Plan sponsor and fiduciary, Aon exercised authority and discretion concerning which carriers and products would be made available through the Plan and on what terms. At the same time, in its capacity as broker and benefits consultant, Aon stood to receive commissions and other compensation generated by the very insurance arrangements that it selected, recommended, retained, and administered for the Plan.

28. Upon information and belief, Aon also exercised authority or influence over the amount and structure of the compensation payable to itself, including whether compensation would be paid as a level commission, a heaped commission, a flat annual commission, an administration fee, or another form of carrier-paid or premium-funded compensation. Thus, Aon was not merely collecting compensation fixed in advance by an independent fiduciary in an arm's-length transaction; rather, it had the ability to affect the compensation it would receive through decisions concerning the Plan's voluntary benefit arrangements.

29. Further, Aon appointed the Committee to, among other things, avoid self-dealing and conflicts of interest, and to ensure that any compensation received from dealing with the Plan complied with ERISA's strict prohibitions under 29 U.S.C. § 1106(b). Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

30. Accordingly, Aon during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Committee.

31. Accordingly, Aon during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

***Committee Defendants***

32. As discussed above, Aon appointed the Committee to, among other things, avoid self-dealing and conflicts of interest, and to ensure that any compensation received from transacting with the Plan complied with ERISA's strict prohibitions.

33. The Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each exercised discretionary authority over management or disposition of Plan assets.

34. The Committee and unnamed members of the Committee during the Class Period (referred to herein as John Does 1-10), are collectively referred to herein as the "Committee Defendants."

## IV. CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):[5]

> All persons who were participants in the Plan, and who were participants in voluntary benefit products placed and administered with the involvement of Defendant at any time between October 23, 2020 through the date of judgment (the "Class Period").

36. The members of the Class are so numerous that joinder of all members is impractical. At the start of the Class Period, the Plan had 12,890 participants. *See* 2020 Form 5500 for the Plan, at 2. By 2024, the Plan had 13,112 participants. *See* 2024 Form 5500 for the Plan, at 2.

37. Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan and were participants in voluntary benefit

[5] Plaintiffs reserve the right to propose other or additional classes or subclasses in this motion for class certification or subsequent pleadings in this action.

products that were selected and administered with the involvement of Defendant. Plaintiffs have suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs consistently with other Class members. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendant's wrongful conduct.

38. There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A. Whether Defendants are/were fiduciaries of the Plan;

B. Whether Defendants breached their fiduciary duty of loyalty by engaging in the conduct described herein;

C. Whether Defendants committed prohibited transactions by engaging in the conduct described herein;

D. The proper form of equitable and injunctive relief; and

E. The proper measure of monetary relief.

39. Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

40. This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for

Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

41. In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V. DEFENDANTS HAVE BEEN ENGAGING IN PROHIBITED SELF-DEALING WITH THE PLAN

### A. The Plan

42. In addition to traditional employee welfare benefits, employers often provide their employees with the opportunity to purchase voluntary benefits, such as health, vision, dental, long-term disability, life insurance, legal, life insurance, supplemental disability, long term care, and critical illness., and other similar coverages. Unlike traditional benefits, which are usually subsidized by the employer, the entire cost of these voluntary benefits is paid by the employee through a payroll deduction.

43. Voluntary benefits have existed for decades, but recent market trends indicate that employers increasingly offer voluntary benefits "because they allow employers to expand the benefits package without absorbing significant direct cost, while giving employees options that feel relevant to their specific needs and life stage."[6]

---

[6] Selerix, *9 Employee Benefits Trends Shaping 2026* (July 10, 2026), https://selerix.com/blog/trends-in-employee-benefits/.

44. Employers who sponsor voluntary benefits plans must comply with ERISA unless the plans qualify for the Department of Labor's specific "safe harbor" exemption.[7] "For a benefit to be exempt from ERISA as a voluntary benefit, the benefit must meet each of the following requirements:

1. No contributions are made by the employer;
2. Participation in the benefit program is completely voluntary for employees;
3. The only function the employer provides is, without 'endorsing' the program: (i) permitting the insurer of the plans to publicize the program to employees or members, (ii) collecting premiums through payroll deductions, and (iii) remitting those premiums to the insurer; and
4. The employer receives no consideration — in the form of cash or otherwise — in connection with the benefit program, other than reasonable compensation for administrative services actually rendered in connection with payroll deductions or dues checkoffs.[8] The employer may not make any profit from providing such administrative services."[9]

*Id.*

45. To escape ERISA coverage, an employee-funded, voluntary benefit program must strictly satisfy all four prongs of the Department of Labor's Safe Harbor Exemption under 29 C.F.R. § 2510.3-1(j). If an employer or plan sponsor fails to maintain absolute neutrality under

[7] *See* Grace Elliot & Laura L. Ferguson, *Are Your 'Voluntary Benefits' Really Exempt From ERISA? It's Worth Checking* (Apr. 22, 2026), https://www.troutman.com/insights/are-your-voluntary-benefits-really-exempt-from-erisa-its-worth-checking/.

[8] *See* Labor Regulation § 2510.3-1(j).

[9] Elliot & Ferguson, *supra*.

even a single prong, the safe harbor instantly collapses, and the plan falls under ERISA jurisdiction by operation of law.

46. Here, at the very minimum, Defendants disqualified themselves from safe harbor eligibility under Prong 4 of the Safe Harbor (The No-Consideration Requirement). Prong 4 strictly mandates that the employer or plan sponsor may receive zero consideration, cash, financial incentives, or profit in connection with the voluntary program. Defendants did not operate this program at a break-even administrative cost. Instead, Aon utilized its unchecked corporate power over its own employees' plans to collect and retain $14,834,190 in total internal commissions and supplemental administrative fees. The moment an employer derives an internal corporate profit line from its employees' paychecks, Safe Harbor eligibility hits a mathematical hard stop and is permanently destroyed.

47. Under the Department of Labor's Plan Asset Regulation, 29 C.F.R. § 2510.3-102(a)(1), participant contributions withheld by an employer from wages become plan assets by operation of law as of the earliest date they can reasonably be segregated from the employer's general assets. Because the final premium rates charged to employees were a direct, inverted mathematical function of Defendants' self-dictated corporate commission demands, the funds deducted from Plaintiffs' paychecks constituted Plan assets the exact microsecond they were segregated from general corporate payroll accounts. Defendants used their fiduciary authority to cause the Plan to accept these artificially inflated premiums, effectively intercepting segregated Plan assets to fund its own corporate bottom line before routing the remainder to the pass-through insurance carriers.

48. Defendants concede through the filing of the Plan's Form 5500 that the Plan is subject to ERISA. *See* 2024 Form 5500 for the Plan, at 1 ("This form is required to be filed for

employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) …").

49. Defendants exercised discretionary, authority and control over the management and administration of the voluntary benefits program, including by establishing the voluntary benefits program, selecting and retaining itself as the primary broker for the voluntary benefits program, promoting the voluntary benefits program during annual open enrollment through company-wide communications and enrollment materials distributed to employees in its, *inter alia*: 1) 2026 Aon Benefits Guide (Exhibit A); 2) 2026 Aon Frequently Asked Questions (Exhibit B); 3) 2026 Aon Make It Yours brochure (Exhibit C); 4) 2026 Aon Quick Guide (Exhibit D); 5) 2024 Aon Benefits Guide (Exhibit E); 6) 2024 Aon Benefits Guide (Exhibit F); 7) 2021 New Hire Guide (Exhibit G); and 8) 2020 New Hire Guide (Exhibit H).

50. Defendants' actions in recommending, selecting, and retaining insurers and products; structuring and receiving compensation tied to participant-paid premiums; and influencing plan administrative processes with respect to voluntary benefits, all constitute fiduciary conduct.

51. Further, through its actions, Aon has endorsed the services provided under the Plan, thus subjecting its actions, and the Plan itself, to governance under ERISA.

### B. Defendants Had/Has Fiduciary Responsibilities Concerning the Administration of the Voluntary Benefit Plans

52. An entity "is a fiduciary with respect to a plan" if it "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

53. Under ERISA, employers have a duty to select insurers for their employees with care. *Radford Tr. v. First UNUM Life Ins. Co. of Am.*, 321 F. Supp. 2d 226, 249 (D. Mass. 2004).

54. Plan sponsors who choose service providers for a plan have a fiduciary duty to diligently and prudently select such providers, including voluntary insurance benefit administrators. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008) (describing the process of "buy[Ing] insurance for others" in an ERISA-governed plan, including selecting an administrator and evaluating rates and claims processing ability); *see also* 29 U.S.C. § 1002(21) (stating that a fiduciary is one who exercises "discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets").

55. Aon, in addition to being a Plan fiduciary, held itself out as the broker and consultant for the Plan with respect to the selection, marketing, and placement of voluntary benefit products, including soliciting proposals, evaluating carriers, recommending products, negotiating terms, facilitating enrollment, and arranging compensation structures.

56. In performing these functions, Aon exercised discretionary authority and control over plan management and/or plan assets, rendered advice for a fee or other compensation with respect to the selection and retention of insurers and products, and had discretionary responsibility in plan administration related to voluntary benefits.

57. Aon arranged, received, and retained compensation in the form of commissions and other consideration embedded in participant-paid premiums. *See* Schedule A's attached to 2020-2024 Form 5500s for the Plan.

58. The commissions and administration fees paid to Aon were tied to the volume or amount of participant-paid premiums, and were paid by parties dealing with the plan – namely the insurance carriers – in connection with transactions involving plan assets.

59. Pursuant to the Department of Labor's Plan Asset Regulation, 29 C.F.R. § 2510.3-102(a)(1), the assets of an ERISA plan include amounts that a participant has withheld from his or her wages by an employer for contribution to the plan. Under this explicit regulatory command, these payroll deductions become plan assets as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

60. Aon did not merely negotiate a separate arm's-length commercial fee with insurance carriers out of independent corporate funds. Instead, because the participant-paid premium rates were a direct mathematical function of Aon's compensation demands, the plan assets deducted from Plaintiffs' paychecks were artificially inflated. Consequently, when those segregated plan assets were routed, whether through a dedicated plan trust account, a third-party administrator clearing account, or directly to the carrier, Aon intercepted and extracted its compensation directly from funds that retained their character as plan assets.

61. Aon, while acting with respect to the management or disposition of Plan assets, engaged in self-dealing by setting, collecting, and retaining commission compensation and administration fees out of Plan assets, in contravention of ERISA.

62. Aon failed to avoid self-dealing and conflicts of interest, and failed to ensure that any compensation received from dealing with the Plan complied with ERISA's strict prohibitions under 29 U.S.C. § 1106(b), including by obtaining appropriate authorization and ensuring that any compensation did not result from Aon acting in any transaction involving the Plan on behalf of a party whose interests were adverse to those of the Plan and its participants.

63. Aon's compensation structure and receipt of commissions and administration fees influenced or had the tendency to influence its recommendations and actions regarding the

selection, marketing, and placement of voluntary benefits, and the level and cost of those benefits to participants.

64. Aon did not simply receive a commission independently determined and paid by the carrier from general assets. Upon information and belief: Aon determined or negotiated the compensation it would receive; the carrier incorporated that compensation into the premium quoted to the Plan; Aon, acting as the Plan fiduciary responsible for carrier/product selection, then caused the Plan to accept the resulting premium; participants' payroll contributions funded that premium; and the carrier remitted the predetermined portion of those payments to Aon. The premium deducted from participants' wages therefore included an identifiable economic charge attributable to Aon's compensation.[10]

65. The conflict inherent in this arrangement was direct. In negotiating or selecting a voluntary benefit program, Aon had a fiduciary interest in obtaining favorable terms and lower costs for Plan participants, while simultaneously having a corporate financial interest in maximizing the commissions and fees payable to itself. To the extent a carrier incorporated Aon's requested compensation into the premium, reducing Aon's compensation would reduce the amount that had to be recovered through participant premiums, all else being equal.

66. ERISA required Aon to resolve that conflict in favor of the Plan and its participants and prohibited Aon from using fiduciary authority over Plan transactions to generate additional compensation for itself. Aon instead selected and retained arrangements under which it received

[10] Nevertheless, even if an insurance carrier obtained title to premium amounts before remitting Aon's commission, ERISA § 406(b)(3) separately prohibits a fiduciary from receiving consideration for its own account from a party dealing with the Plan in connection with a transaction involving Plan assets. The commissions alleged here were paid by the insurance carriers because of, and in connection with, the Plan insurance transactions and the participant contributions which were used to purchase the insurance coverage.

compensation tied to the participant-funded insurance products over which it exercised fiduciary authority.

67. Aon failed to avoid self-dealing and conflicts of interest, and failed to ensure that any compensation received from parties dealing with the plan complied with ERISA's strict prohibitions under 29 U.S.C. § 1106(b), such as by obtaining appropriate authorization and ensuring that any compensation did not result from Aon acting in any transaction involving the Plan on behalf of a party whose interests were adverse to those of the Plan and its participants.

68. Defendants' compensation structure and receipt of commissions and fees influenced or had the tendency to influence its recommendations and actions regarding the selection, marketing, and placement of voluntary benefits, and the level and cost of those benefits to participants

69. No independent Plan fiduciary is identified in the Plan's Form 5500 filings or participant materials as having independently negotiated, approved, or monitored Aon's broker compensation for the challenged voluntary-benefit products. Plaintiffs allege, on information and belief, that Aon did not establish an effective independent-fiduciary process to determine whether Aon should receive compensation from these transactions or, if so, the amount and structure of such compensation

**C. Aon's Voluntary Benefits Program**

70. At the start of the Class Period, the Plan had 12,890 participants. *See* 2020 Form 5500 for the Plan, at 2.

71. By 2024, the Plan had 13,112 participants. *See* 2024 Form 5500 for the Plan, at 2.

72. The insurance carriers for the voluntary benefits have remained the same since the start of the Class Period.

73. As discussed above, and at all relevant times, Aon acted as a fiduciary of the voluntary benefits program.

74. During the Class Period, Aon, directly or through affiliated entities, received broker commissions and administration fees in amounts identified in the table below.

| Plan Year | Total Commissions Paid | Total Administration Fees Paid | Total Commissions and Administration Fees Paid |
|---|---|---|---|
| 2024 | $2,316,021 | $496,824 | $2,812,845 |
| 2023 | $1,398,752 | $135,352 | $1,534,104 |
| 2022 | $1,640,469 | $289,368 | $1,929,837 |
| 2021 | $3,498,534 | $574,866 | $4,073,400 |
| 2020 | $3,463,606 | $1,020,398 | $4,484,004 |
| **TOTAL** | **$12,317,382** | **$2,516,808** | **$14,834,190** |

**1. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Health Plans**

75. At all relevant times, Aon acted as a fiduciary by administering and selecting the health voluntary insurance policies available to participants in the Plan.

76. Aon offered several health plans to Plan participants during the class period. The insurance carriers for the health plans included: Kaiser Foundation; Bluecross Blueshield of Illinois; Cigna Health and Life Insurance Company and Affiliates; Priority Health Insurance Company; Medical Mutual; Health Net; Dean Health Plan Inc.; UPMC Health Options; Prevea360 Health Plan; Geisinger Quality Options, Inc.; and Hawaii Medical Service Association.

77. For each of the health plans offered by Aon to Plan participants, Aon and/or its affiliates received commissions and/or administration fees from the premiums paid by participants in the Plan.

**a. Kaiser Foundation**

78. Throughout the Class Period, Kaiser Foundation was an insurance carrier for certain of Aon's health insurance policies.

79. Aon[11] collected commissions from the premiums paid by participants in the plan during that period of time.

80. The table below demonstrates the total commissions for the voluntary health insurance policies with Kaiser Foundation.

| **Plan Year** | **Health - Kaiser Plan Participants** | **Insurance Carrier** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|---|
| 2024 | 167 | Kaiser Foundation Health Plan of Colorado | $18,761 | $944,640 |
| | 311 | Kaiser Foundation Health Plan, Inc. | $44,513 | $1,893,627 |
| | 174 | Kaiser Foundation Health Plan, Inc. | $29,446 | $1,465,651 |
| | 281 | Kaiser Foundation Health Plan of Georgia, Inc. | $37,751 | $1,912,571 |
| | 98 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. | $13,906 | $647,698 |
| | 16 | Kaiser Foundation Health Plan of the Northwest | $2,444 | $122,364 |
| | 5 | Kaiser Foundation Health Plan, Inc. | $1,885 | $96,330 |
| | 63 | Kaiser Foundation Health Plan of Washington Options, Inc. | $13,285 | $757,386 |
| | | **TOTAL** | **$161,991** | |

[11] According to the Schedule A's attached to the Plan's Form 5500s, Aon Insurance Agency LLC received the commissions for the Kaiser Foundation health plans. Aon Insurance Agency LLC is a wholly-owned subsidiary and operating entity of Aon plc.

| | | | | |
|---|---|---|---|---|
| 2023 | 175 | Kaiser Foundation Health Plan of Colorado | $19,601 | $920,511 |
| | 290 | Kaiser Foundation Health Plan, Inc. | $45,091 | $2,271,693 |
| | 183 | Kaiser Foundation Health Plan, Inc. | $27,676 | $1,423,270 |
| | 273 | Kaiser Foundation Health Plan of Georgia, Inc. | $36,099 | $1,683,608 |
| | 100 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. | $10,830 | $591,240 |
| | 18 | Kaiser Foundation Health Plan of the Northwest | $2,905 | $130,072 |
| | 15 | Kaiser Foundation Health Plan, Inc. | $1,138 | $55,169 |
| | 181 | Kaiser Foundation Health Plan of Washington Options, Inc. | $21,783 | $1,085,322 |
| | | **TOTAL** | **$165,123** | |
| | | | | |
| 2022 | 156 | Kaiser Foundation Health Plan of Colorado | $13,369 | $743,397 |
| | 315 | Kaiser Foundation Health Plan, Inc. | $31,544 | $1,589,495 |
| | 193 | Kaiser Foundation Health Plan, Inc. | $28,390 | $1,675,762 |
| | 261 | Kaiser Foundation Health Plan of Georgia, Inc. | $29,456 | $1,614,679 |
| | 105 | Kaiser Foundation Health Plan of the Mid-Atlantic | $11,571 | $577,833 |

| | | | | |
|---|---|---|---|---|
| | 26 | Kaiser Foundation Health Plan of the Northwest | $2,513 | $139,577 |
| | 5 | Kaiser Foundation Health Plan of Hawaii | $517 | $31,762 |
| | 165 | Kaiser Foundation Health Plan of Washington Options, Inc. | $18,390 | $900,773 |
| | | **TOTAL** | **$135,750** | |
| | | | | |
| 2021 | 159 | Kaiser Foundation Health Plan of Colorado | $16,853 | $826,087 |
| | 319 | Kaiser Foundation Health Plan, Inc. | $36,187 | $1,808,305 |
| | 208 | Kaiser Foundation Health Plan, Inc. | $26,728 | $1,333,259 |
| | 282 | Kaiser Foundation Health Plan of Georgia, Inc. | $32,933 | $1,627,370 |
| | 111 | Kaiser Foundation Health Plan of the Mid-Atlantic | $11,362 | $564,074 |
| | 23 | Kaiser Foundation Health Plan of the Northwest | $2,773 | $134,040 |
| | 1 | Kaiser Foundation Health Plan of Hawaii | $137 | $6,864 |
| | 153 | Kaiser Foundation Health Plan of Washington Options, Inc. | $16,298 | $826,729 |
| | | **TOTAL** | **$143,271** | |
| | | | | |
| 2020 | 183 | Kaiser Foundation Health Plan of Colorado | $18,091 | $900,770 |

| | | | | |
|---|---|---|---|---|
| | 331 | Kaiser Foundation Health Plan, Inc. | $37,239 | $1,892,970 |
| | 220 | Kaiser Foundation Health Plan, Inc. | $25,623 | $1,280,067 |
| | 296 | Kaiser Foundation Health Plan of Georgia, Inc. | $31,480 | $1,590,642 |
| | 122 | Kaiser Foundation Health Plan of the Mid-Atlantic | $11,855 | $589,253 |
| | 30 | Kaiser Foundation Health Plan of the Northwest | $2,902 | $151,717 |
| | 1 | Kaiser Foundation Health Plan of Hawaii | $80 | $2,720 |
| | 106 | Kaiser Foundation Health Plan of Washington Options, Inc. | $11,823 | $590,077 |
| | | **TOTAL** | **$139,093** | |
| **GRAND TOTAL** | | | **$745,228** | |

81. The total amount of commissions paid to Aon or its affiliates from 2020 through 2024 were $745,228.

**b. Bluecross Blueshield of Illinois**

82. Throughout the Class Period, Bluecross Blueshield of Illinois was an insurance carrier for certain of Aon's health insurance policies.

83. Aon[12] collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

[12] According to the Schedule A's attached to the Plan's Form 5500s, Aon Insurance Agency LLC received the commissions for the Kaiser Foundation health plans. Aon Insurance Agency LLC is a wholly-owned subsidiary and operating entity of Aon plc.

84. The table below demonstrates the total commissions and administration fees for the voluntary health insurance policies with Bluecross Blueshield of Illinois.

| **Plan Year** | **Health - Bluecross Blueshield Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 85 | $0 | $0 | $0 | $624,476 |
| 2023 | 89 | $0 | $0 | $0 | $721,770 |
| 2022[13] | 97 | $0 | $0 | $0 | $781,145 |
| 2021 | 10,404 | $1,335,834 | $79 | $1,335,913 | $64,261,309 |
| 2020 | 10,926 | $1,362,703 | $6 | $1,362,709 | $68,189,748 |
| **TOTAL** | | **$2,698,537** | **$85** | **$2,698,622** | |

85. The total amount of commissions paid to Aon[14] from 2020 to 2024 were $2,698,537 and the total amount of administration fees paid to Aon were $85.

**c. Cigna Health and Life Insurance Company and Affiliates (Cigna)**

86. In 2020 and 2021 Cigna Health and Life Insurance Company and Affiliates (Cigna) an insurance carrier for certain of Aon's health insurance policies.

---

[13] Starting in 2022 and continuing until at least 2024, the insurance provided to Plan participants included dental. Prior to 2022, the insurance provided to Plan participants was only health. See Schedule A's attached to 2020 to 2024 Form 5500s for the Plan.

[14] The commissions were paid to Hewitt Insurance Brokerage LLC. Hewitt Insurance Brokerage LLC is a legal subsidiary within Aon's corporate structure.

87. Aon Insurance Agency LLC collected administration fees from the premiums paid by participants in the plan during that period of time.

88. The table below demonstrates the total administration fees for the voluntary health insurance policies with Cigna Health and Life Insurance Company and Affiliates (Cigna).

| **Plan Year** | **Health - Cigna Health and Life Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2021 | 1,167 | $0 | $322,957 | $322,957 | $15,671,090 |
| 2020 | 1,568 | $0 | $385,834 | $385,834 | $18,908,063 |
| **TOTAL** | | **$0** | **$708,791** | **$708,791** | |

89. The total amount of administration fees paid to Aon Insurance Agency LLC from 2020 to 2021 were $708,791.

### d. Cigna Health and Life Insurance Company

90. Throughout the Class Period, Cigna Health and Life Insurance Company was an insurance carrier for certain of Aon's health, dental and evacuation insurance policies.

91. Aon Consulting collected commissions from the premiums paid by participants in the plan during that period of time.

92. The table below demonstrates the total commissions for the voluntary health insurance policies with Cigna Health and Life Insurance Company.

| **Plan Year** | **Health, Dental - Cigna Health and Life Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 108 | $46,356 | $626,715 |
| 2023 | 92 | $65,144 | $894,553 |
| 2022 | 86 | $66,957 | $847,879 |

| | | | |
|---|---|---|---|
| 2021 | 91 | $55,614 | $697,214 |
| 2020 | 85 | $61,723 | $774,176 |
| **TOTAL** | | **$295,794** | |

93. The total amount of commissions paid to Aon from 2020 to 2024 were $295,794.

**e. Priority Health Insurance Company**

94. Throughout the Class Period, Priority Health Insurance Company was an insurance carrier for certain of Aon's health insurance policies.

95. From 2020 to 2024, individuals Jennifer N. Buck, Charles Axford, Kirk Davis, and Robert Malley collected commissions from the premiums paid by participants in the plan during that period of time.

96. From 2022 to 2024, Jennifer N. Buck received commissions from the premiums paid by participants in the plan. According to her LinkedIn profile, Ms. Buck is Senior Vice President at Aon Chief Actuary – Aon Benefit Experience.[15]

97. In 2021 and 2022, Charles Axford received commissions from the premiums paid by participants in the plan. Plaintiffs believe Charles Axford was a broker agent for Aon during that time.

98. In 2021, Kirt Davis received commissions from the premiums paid by participants in the plan. According to his LinkedIn profile, Mr. Davis was employed as a sales executive at Aon Active Health Exchange from June 2016 to September 2021.[16]

[15] *See* https://www.linkedin.com/in/jenbuckfsa/.

[16] *See* https://www.linkedin.com/in/kirt-davis-9933572/.

99. In 2020 and 2021, Robert Malley received commissions from the premiums paid by participants in the plan. According to his LinkedIn profile, Mr. Malley was employed as a Marketplace Leader for Aon from July 2017 to April 2026.[17]

100. The table below demonstrates the total commissions for the voluntary health insurance policies with Priority Health Insurance Company.

| **Plan Year** | **Health - Priority Health Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 124 | $16,459 | $822,939 |
| 2023 | 179 | $20,459 | $1,022,950 |
| 2022 | 163 | $15,766 | $788,296 |
| 2021 | 133 | $12,628 | $615,778 |
| 2020 | 140 | $13,656 | $626,498 |
| **TOTAL** | | **$78,968** | |

101. From 2020 to 2024, the total amount of commissions paid to Aon or employees of Aon were $78,968.

**f. Medical Mutual**

102. Throughout the Class Period, Medical Mutual was an insurance carrier for certain of Aon's health, prescription drug insurance policies.

103. From 2020 to 2024, Aon Insurance Agency LLC collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

104. The table below demonstrates the total commissions and administration fees for the voluntary health, prescription drug insurance policies with Medical Mutual.

[17] *See* https://www.linkedin.com/in/robert-malley-998099b/.

| **Plan Year** | **Health, Prescription Drug - Medical Mutual Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 111 | $26,424 | $53 | $26,477 | $47 |
| 2023 | 28 | $5,841 | $0 | $5,841 | $38 |
| 2022 | 14 | $2,488 | $0 | $2,488 | $9,210 |
| 2021 | 26 | $5,033 | $0 | $5,033 | $9,660 |
| 2020 | 9 | $2,065 | $0 | $2,065 | $11,765 |
| **TOTAL** | | **$41,851** | **$53** | **$41,904** | |

105. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $41,851 and the total amount of administration fees paid were $53.

**g. Health Net**

106. Throughout the Class Period, Health Net was an insurance carrier for certain of Aon's health insurance policies.

107. From 2020 to 2024, Aon Insurance Agency LLC collected commissions from the premiums paid by participants in the plan during that period of time.

108. The table below demonstrates the total commissions for the voluntary health insurance policies with Health Net.

| **Plan Year** | **Health - Priority Health Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 22 | $6,139 | $14,079 |
| 2023 | 25 | $5,267 | $10,539 |
| 2022 | 15 | $3,139 | $10,469 |
| 2021 | 15 | $2,925 | $10,084 |
| 2021 | 0 | $11 | |
| 2020 | 15 | $4,057 | $14,798 |

| | | | |
|---|---|---|---|
| 2020 | 1 | $122 | $6,059 |
| **TOTAL** | | **$21,660** | |

109. From 2020 to 2024, the total amount of commissions paid to Aon or its affiliates were $21,660.

**h. Dean Health Plan Inc.**

110. Throughout the Class Period, Dean Health Plan Inc. was an insurance carrier for certain of Aon's health insurance policies.

111. From 2020 to 2024, individuals Jennifer Buck, Charles Axford, or Kirk Davis, collected commissions from the premiums paid by participants in the plan during that period of time.

112. From 2022 to 2024, Jennifer Buck received commissions from the premiums paid. In 2021, Charles Axford received commissions from the premiums paid. In 2020, Kirt Davis received commissions from the premiums paid.

113. The table below demonstrates the total commissions for the voluntary health insurance policies with Dean Health Plan Inc.

| **Plan Year** | **Health - Dean Health Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 21 | $3,294 | $169,576 |
| 2023 | 26 | $3,040 | $158,598 |
| 2022 | 28 | $2,472 | $126,601 |
| 2021 | 15 | $1,571 | $79,340 |
| 2020 | 53 | $8,149 | $412,464 |
| 2020[18] | 16 | $2,011 | $101,248 |
| **TOTAL** | | **$20,537** | |

[18] When plan years are listed multiple times in tables, there were multiple Schedule A's for an insurance company for a particular year.

114. From 2020 to 2024, the total amount of commissions paid to Aon or Aon's employees were $20,537.

**i. UPMC Health Options**

115. Throughout the Class Period, UPMC Health Options was an insurance carrier for certain of Aon's health insurance policies.

116. From 2020 to 2024, Aon Insurance Agency LLC collected commissions from the premiums paid by participants in the plan during that period of time.

117. The table below demonstrates the total commissions for the voluntary health insurance policies with UPMC Health Options.

| Plan Year | Health - UPMC Health Plan Participants | Amt. Commissions Paid | Total Premium |
|---|---|---|---|
| 2024 | 74 | $9,583 | $488,723 |
| 2023 | 53 | $6,664 | $354,845 |
| 2022 | 23 | $2,580 | $134,258 |
| 2021 | 8 | $924 | $48,629 |
| 2021 | 1 | $139 | $6,881 |
| 2021 | 2 | $103 | $6,895 |
| 2021 | 1 | $0 | $1,388 |
| 2020 | 2 | $398 | $19,903 |
| 2020 | 1 | $76 | $4,460 |
| **TOTAL** | | **$20,467** | |

118. From 2020 to 2024, the total amount of commissions paid to Aon or its affiliates were $20,467.

**j. Prevea360 Health Plan**

119. Throughout the Class Period, Prevea360 Health Plan was an insurance carrier for certain of Aon's health insurance policies.

120. From 2021 to 2024, individual, Jennifer Buck, collected commissions from the premiums paid by participants in the plan during that period of time.

121. The table below demonstrates the total commissions for the voluntary health insurance policies with Prevea360 Health Plan.

| **Plan Year** | **Health - Prevea360 Health Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 33 | $5,951 | $303,564 |
| 2023 | 27 | $0 | $258,940 |
| 2022 | 37 | $6,636 | $286,321 |
| 2021 | 41 | $6,856 | $346,525 |
| **TOTAL** | | **$19,443** | |

122. From 2021 to 2024, the total amount of commissions paid to Aon or Aon's employees were $19,443.

**k. Geisinger Quality Options, Inc.**

123. Throughout the Class Period, Geisinger Quality Options, Inc. was an insurance carrier for certain of Aon's health insurance policies.

124. From 2020 to 2024, Hewitt Insurance Brokerage LLC collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

125. The table below demonstrates the total commissions and administration fees for the voluntary health insurance policies with Geisinger Quality Options, Inc.

| **Plan Year** | **Health - Geisinger Quality Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 7 | $1,262 | $0 | $1,262 | $63,116 |
| 2023 | 8 | $1,431 | $0 | $1,431 | $71,540 |

| | | | | | |
|---|---|---|---|---|---|
| 2022 | 13 | $1,929 | $0 | $1,929 | $96,462 |
| 2021 | 22 | $3,027 | $61 | $3,088 | $151,362 |
| 2020 | 12 | $2,079 | $42 | $2,121 | $103,970 |
| **TOTAL** | | **$9,728** | **$103** | **$9,831** | |

126. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $9,728 and the total amount of administration fees paid were $103.

### l. Hawaii Medical Service Association

127. Throughout the Class Period, Hawaii Medical Service Association was an insurance carrier for certain of Aon's health insurance policies.

128. From 2020 to 2024, Hewitt Insurance Brokerage LLC collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

129. The table below demonstrates the total commissions and administration fees for the voluntary health insurance policies with Geisinger Quality Options, Inc.

| **Plan Year** | **Health - Hawaii Medical Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 21 | $0 | $7,328 | $7,328 | $366,390 |
| 2023 | 69 | $0 | $9,873 | $9,873 | $495,995 |
| 2022 | 70 | $0 | $8,618 | $8,618 | $430,905 |
| 2021 | 58 | $0 | $7,754 | $7,754 | $396,782 |
| 2020 | 58 | $7,835 | $0 | $7,835 | $432,306 |
| **TOTAL** | | **$7,835** | **$33,573** | **$41,408** | |

130. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $7,835 and the total amount of administration fees paid were $33,573.

### 2. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Dental Plan

131. At all relevant times, Aon acted as a fiduciary by administering and selecting the dental voluntary insurance policies available to participants in the Plan.

132. From 2020 through 2024, Aetna Life Insurance Company was the insurance carrier for Aon's dental voluntary insurance policies.

133. Hewitt Insurance Brokerage LLC collected commissions from the premiums paid by participants in the plan during that period of time.

134. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions for the dental voluntary benefits plan.

| **Plan Year** | **Dental - Aetna Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 4,387 | $74,916 | $1,872,825 |
| 2023 | 4,481 | $77,422 | $1,873,693 |
| 2022[19] | 4,308 | $45,767 | $1,694,470 |
| 2021 | 4,307 | $699,178 | $33,738,803 |
| 2020 | 4,910 | $698,876 | $36,924,484 |
| **TOTAL** | | **$1,596,159** | |

135. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $1,596,159.

### 3. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Life Insurance Plan

136. At all relevant times, Aon acted as a fiduciary by administering and selecting the life insurance voluntary insurance policies available to participants in the Plan.

137. From 2020 through 2024 (excluding 2023), Metropolitan Life Insurance Company was the insurance carrier for Aon's life insurance voluntary insurance policies.

[19] From 2020 to 2022, the Schedule A's identified the benefit plan as dental and health. From 2023 to 2024 the voluntary benefit plan was dental only.

138. Aon Consulting Inc. collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

139. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions and administration fees for the life insurance voluntary benefits plan.

| **Plan Year** | **Life Ins. - Metropolitan Life Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 4,355 | $381,785 | $208,976 | $590,761 | $10,652,738 |
| 2022 | 4,055 | $425,282 | $180,014 | $605,296 | $9,641,628 |
| 2021 | 3,600 | $302,019 | $137,822 | $439,841 | $8,954,508 |
| 2020 | 3,376 | $329,069 | $105,301 | $434,370 | $8,491,748 |
| **TOTAL** | | **$1,438,155** | **$632,113** | **$2,070,268** | |

140. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $1,438,155 and the total amount of administration fees paid were $632,113.

### 4. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Accident Plan

141. At all relevant times, Aon acted as a fiduciary by administering and selecting the accident voluntary insurance policies available to participants in the Plan.

142. From 2021 through 2024, Combined Insurance was the insurance carrier for Aon's accident voluntary insurance policies.

143. Custom Benefit Programs Inc.[20] collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

[20] Custom Benefit Programs, Inc. is a subsidiary/operating entity within Aon.

144. As demonstrated in the table below, and starting in 2021 and continuing to 2024, Aon and/or its affiliates received commissions and administration fees for the accident voluntary benefits plan.

| Plan Year | Accident, Critical Illness - Combined Plan Participants | Amt. Commissions Paid | Amt. Administration Fees Paid | Total Commission and Administration Fees Paid | Total Premium |
|---|---|---|---|---|---|
| 2024 | 60 | $55,530 | $0 | $55,530 | $379,905 |
| 2024 | 1,145 | $683,330 | $3,090 | $686,420 | $778,401 |
| 2023 | 2,545 | $62,524 | $0 | $62,524 | $375,081 |
| 2022 | 2,406 | $69,807 | $0 | $69,807 | $353,825 |
| 2021 | 1,969 | $67,921 | $0 | $67,921 | $335,440 |
| **TOTAL** | | **$939,112** | **$3,090** | **$942,202** | |

145. The total amount of commissions paid to Aon or its affiliates from 2021 to 2024 were $939,112 and the total amount of administration fees paid were $3,090.

**5. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Dental, Vision, HMO contract Plan**

146. At all relevant times, Aon acted as a fiduciary by administering and selecting the dental, vision, HMO contract voluntary insurance policies available to participants in the Plan.

147. From 2020 through 2024, Metropolitan Life Insurance Company was the insurance carrier for Aon's dental, vision, HMO contract voluntary insurance policies.

148. Hewitt Insurance Brokerage LLC collected commissions from the premiums paid by participants in the plan during that period of time.

149. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions for the dental, vision, HMO contract voluntary benefits plan.

| Plan Year | Dental, Vision, HMO - Metropolitan Life Plan Participants | Amt. Commissions Paid | Total Premium |
|---|---|---|---|
| 2024 | 5,325 | $167,633 | $4,102,184 |
| 2023 | 6,559 | $152,424 | $4,418,038 |
| 2022 | 6,893 | $165,271 | $4,532,564 |
| 2021 | 7,697 | $154,767 | $4,884,678 |
| 2020 | 7,714 | $172,005 | $5,435,444 |
| **TOTAL** | | **$812,100** | |

150. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $812,100.

### 6. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Supplemental Disability Plan

151. At all relevant times, Aon acted as a fiduciary by administering and selecting the supplemental disability voluntary insurance policies available to participants in the Plan.

152. From 2020 through 2024, Provident Life and Accident Insurance Company was the insurance carrier for Aon's supplemental disability voluntary insurance policies.

153. Aon Consulting Inc. collected commissions and administration fees from the premiums paid by participants in the plan during that period of time.

154. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions for the supplemental disability voluntary benefits plan.

| Plan Year | Supp. Disability - Provident Life Plan Participants | Amt. Commissions Paid | Amt. Administration Fees Paid | Total Commission and Administration Fees Paid | Total Premium |
|---|---|---|---|---|---|
| 2024 | 373 | $2,897 | $54,877 | $57,774 | $636,376 |
| | 22 | $16 | $1,428 | $1,444 | $45,646 |

| | | | | | |
|---|---|---|---|---|---|
| | 5 | $0 | $221 | $221 | $984 |
| | 694 | $0 | $89,264 | $89,264 | $469,218 |
| | 54 | $0 | $6,726 | $6,726 | $31,957 |
| | 2 | $0 | $29 | $29 | $655 |
| | 3 | $0 | $51 | $51 | $551 |
| | 15 | $0 | $2,236 | $2,236 | $19,908 |
| | 5 | $0 | $300 | $300 | $1,152 |
| | 57 | $0 | $10,573 | $10,573 | $43,266 |
| **TOTAL** | | **$2,913** | **$165,705** | **$168,618** | |
| | | | | | |
| 2023 | 417 | $79,396 | $0 | $79,396 | $682,148 |
| | 23 | $5,191 | $0 | $5,191 | $45,572 |
| | 5 | $138 | $0 | $138 | $711 |
| | 501 | $92,557 | $0 | $92,557 | $414,479 |
| | 34 | $5,128 | $0 | $5,128 | $24,214 |
| | 2 | $30 | $0 | $30 | $646 |
| | 3 | $60 | $0 | $60 | $702 |
| | 15 | $2,868 | $0 | $2,868 | $18,160 |
| | 5 | $282 | $0 | $282 | $1,077 |
| **TOTAL** | 40 | $9,345 | $0 | $9,345 | $33,080 |
| | | **$194,995** | **$0** | **$194,995** | |
| | | | | | |
| 2022 | 471 | $73,645 | $0 | $73,645 | $632,823 |
| | 27 | $5,547 | $0 | $5,547 | $44,678 |
| | 3 | $188 | $0 | $188 | $731 |
| | 459 | $65,363 | $0 | $65,363 | $335,346 |
| | 39 | $3,998 | $0 | $3,998 | $21,577 |
| | 2 | $58 | $0 | $58 | $596 |
| | 3 | $89 | $0 | $89 | $645 |
| | 16 | $2,616 | $0 | $2,616 | $16,945 |
| | 3 | $100 | $0 | $100 | $659 |
| | 37 | $5,701 | $0 | $5,701 | $24,717 |
| **TOTAL** | | **$157,305** | **$0** | **$157,305** | |
| | | | | | |
| 2021 | 523 | $92,932 | $0 | $92,932 | $801,592 |
| | 30 | $7,431 | $0 | $7,431 | $57,779 |
| | 3 | $146 | $0 | $146 | $596 |

| | | | | | |
|---|---|---|---|---|---|
| | 412 | $83,494 | $0 | $83,494 | $398,114 |
| | 34 | $6,228 | $0 | $6,228 | $30,235 |
| | 2 | $76 | $0 | $76 | $671 |
| | 4 | $108 | $0 | $108 | $691 |
| | 18 | $2,893 | $0 | $2,893 | $20,045 |
| | 2 | $109 | $0 | $109 | $717 |
| | 29 | $6,243 | $0 | $6,243 | $26,078 |
| **TOTAL** | | **$199,660** | **$0** | **$199,660** | |
| | | | | | |
| 2020 | 565 | $91,718 | $0 | $91,718 | $788,378 |
| | 32 | $7,711 | $0 | $7,711 | $57,555 |
| | 2 | $129 | $0 | $129 | $432 |
| | 419 | $68,117 | $0 | $68,117 | $338,236 |
| | 32 | $5,926 | $0 | $5,926 | $32,329 |
| | 3 | $83 | $0 | $83 | $844 |
| | 4 | $62 | $0 | $62 | $776 |
| | 18 | $2,763 | $0 | $2,763 | $18,265 |
| | 3 | $123 | $0 | $123 | $701 |
| | 34 | $5,364 | $0 | $5,364 | $22,892 |
| **TOTAL** | | **$181,996** | **$0** | **$181,996** | |
| | | | | | |
| **GRAND TOTAL** | | **$736,869** | **$165,705** | **$902,574** | |

155. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $736,869 and the total amount of administration fees paid were $165,705.

**7. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting another Dental Plan**

156. At all relevant times, Aon acted as a fiduciary by administering and selecting another dental voluntary insurance policy available to participants in the Plan.

157. From 2020 to 2024, Delta Dental of Illinois was the insurance carrier for Aon's other dental voluntary insurance policy in the Plan.

158. Since 2020, commissions were paid from the employee paid premiums for the dental voluntary insurance policy.

159. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon Insurance Agency LLC received commissions for the dental voluntary benefits plan in the Plan.

| **Plan Year** | **Dental - Delta Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 3,556 | $162,645 | $4,066,115 |
| 2023 | 3,570 | $158,698 | $3,967,447 |
| 2022 | 3,524 | $107,044 | $3,568,621 |
| 2021 | 3,065 | $94,275 | $3,142,509 |
| 2020 | 2,905 | $87,854 | $2,928,592 |
| **TOTAL** | | **$610,516** | |

160. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $610,516.

### 8. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Long-Term Disability Plan

161. At all relevant times, Aon acted as a fiduciary by administering and selecting the long-term disability voluntary insurance policy available to participants in the Plan.

162. From 2020 to 2024, Hartford Life and Accident was the insurance carrier for Aon’s long-term disability voluntary insurance policy in the Plan.

163. Since 2020, commissions were paid from the employee paid premiums for the long-term disability insurance policy to Aon Consulting Inc. or Aon Consulting of New Jersey Inc. administration fees were paid to Aon Consulting Inc., Aon Consulting of New Jersey Inc., or Aon Risk Services Central Inc.

164. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions and administration fees for the long-term disability voluntary benefits plan in the Plan.

| **Plan Year** | **LTD - Hartford Life Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 9,977 | $99,622 | $44,823 | $144,445 | $3,320,733 |
| 2023 | 9,840 | $105,915 | $52,319 | $158,234 | $3,817,093 |
| 2022 | 9,655 | $97,630 | $37,815 | $135,445 | $2,926,577 |
| 2021 | 8,656 | $92,030 | $48,917 | $140,947 | $3,409,982 |
| 2020 | 8,173 | $105,753 | $37,385 | $143,138 | $3,223,940 |
| **TOTAL** | | **$500,950** | **$221,259** | **$722,209** | |

165. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $500,950 and the total amount of administration fees paid were $221,259.

### 9. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting another Dental Plan

166. At all relevant times, Aon acted as a fiduciary by administering and selecting another dental voluntary insurance policy available to participants in the Plan.

167. From 2020 to 2024, Cigna Health and Life Insurance Company and Affiliates (Cigna) was the insurance carrier for Aon's other dental voluntary insurance policy in the Plan.

168. Since 2020, commissions were paid from the employee paid premiums for the dental voluntary insurance policy.

169. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon Insurance Agency LLC received commissions for the dental voluntary benefits plan in the Plan.

| Plan Year | Dental - Cigna Health Plan Participants | Amt. Commissions Paid | Total Premium |
|---|---|---|---|
| 2024 | 1,631 | $74,242 | $1,866,948 |
| 2023 | 1,854 | $82,924 | $2,085,842 |
| 2022 | 2,064 | $63,745 | $2,138,600 |
| 2021 | 2,263 | $64,665 | $2,172,228 |
| 2020 | 1,764 | $46,184 | $1,549,717 |
| **TOTAL** | | **$331,760** | |

170. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $331,760.

**10. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting another Life Insurance Plan**

171. At all relevant times, Aon acted as a fiduciary by administering and selecting another life insurance voluntary insurance policy available to participants in the Plan.

172. From 2020 to 2024, Hartford Life and Accident was the insurance carrier for Aon's other life insurance voluntary insurance policy in the Plan.

173. Since 2020, commissions and administration fees were paid from the employee paid premiums for the other life insurance voluntary insurance policy.

174. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon Insurance Agency LLC and Hewitt Insurance Brokerage LLC received commissions for the life insurance voluntary benefits plan in the Plan. Aon Consulting Inc. and Aon Risk Services Central Inc. received administration fees.

| Plan Year | Life Ins. - Hartford Life Plan Participants | Amt. Commissions Paid | Amt. Administration Fees Paid | Total Commission and Administration Fees Paid | Total Premium |
|---|---|---|---|---|---|
| 2024 | 18,262 | $56,659 | $48,675 | $105,334 | $3,320,733 |
| 2023 | 40,180 | $57,272 | $55,624 | $112,896 | $3,817,093 |

| | | | | | |
|---|---|---|---|---|---|
| 2022 | 39,252 | $54,960 | $47,041 | $102,001 | $2,926,577 |
| 2021 | 38,759 | $54,790 | $54,386 | $109,176 | $3,409,982 |
| 2020 | 40,441 | $45,184 | $24,092 | $69,276 | $3,223,940 |
| **TOTAL** | | **$268,865** | **$229,818** | **$498,683** | |

175. The total amount of commissions paid to Aon or its affiliates from 2020 to 2024 were $268,865 and the total amount of administration fees paid were $229,818.

**11. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Long-Term Care Plan**

176. At all relevant times, Aon acted as a fiduciary by administering and selecting the long-term care voluntary insurance policy available to participants in the Plan.

177. From 2020 to 2024, Metropolitan Life Insurance Company was the insurance carrier for Aon's long-term care voluntary insurance policy in the Plan.

178. Since 2020, commissions and administration fees were paid from the employee paid premiums for the long-term care insurance policy to Aon Consulting Inc.

179. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions and administration fees for the long-term care voluntary benefits plan in the Plan.

| **Plan Year** | **LTC - Metropolitan Life Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 1,610 | $45,715 | $111 | $45,826 | $3,320,733 |
| 2023 | 1,652 | $47,042 | $111 | $47,153 | $3,817,093 |
| 2022 | 1,751 | $47,977 | $95 | $48,072 | $2,926,577 |
| 2021 | 1,793 | $46,092 | $55 | $46,147 | $3,409,982 |
| 2020 | 1,828 | $46,079 | $53 | $46,132 | $3,223,940 |
| **TOTAL** | | **$232,905** | **$425** | **$233,330** | |

180. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $232,905 and the total administration fees were $425.

### 12. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Legal Plan

181. At all relevant times, Aon acted as a fiduciary by administering and selecting the legal voluntary insurance policy available to participants in the Plan.

182. From 2020 to 2024, Metlife Legal Plans was the insurance carrier for Aon's legal voluntary insurance policy in the Plan.

183. Since 2020, commissions and administration fees were paid from the employee paid premiums for the legal insurance policy to Aon Insurance Agency LLC. Some administration fees were paid to Aon Coalition Purchasing Group and Hewitt Insurance Brokerage LLC.

184. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions and administration fees for the legal voluntary benefits plan in the Plan.

| Plan Year | Legal - MetLife Legal Plan Participants | Amt. Commissions Paid | Amt. Administration Fees Paid | Total Commission and Administration Fees Paid | Total Premium |
|---|---|---|---|---|---|
| 2024 | 2,206 | $46,335 | $5,218 | $51,553 | $424,212 |
| 2023 | 2,120 | $45,644 | $4,934 | $50,578 | $456,694 |
| 2022 | 2,116 | $43,917 | $5,590 | $49,507 | $438,047 |
| 2021 | 2,027 | $43,299 | $2,835 | $46,134 | $444,174 |
| 2020 | 1,936 | $40,884 | $6,198 | $47,082 | $406,997 |
| **TOTAL** | | **$220,079** | **$24,775** | **$244,854** | |

185. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $220,079 and the total administration fees were $24,775.

### 13. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Vision Plan

186. At all relevant times, Aon acted as a fiduciary by administering and selecting the vision voluntary insurance policy available to participants in the Plan.

187. From 2020 to 2024, Vision Service Plan was the insurance carrier for Aon's vision voluntary insurance policy in the Plan.

188. Since 2020, commissions were paid from the employee paid premiums for the vision insurance policy to Hewitt Insurance Brokerage LLC.

189. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions for the vision voluntary benefits plan in the Plan.

| **Plan Year** | **Vision - Vision Service Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 4,332 | $43,464 | $869,529 |
| 2023 | 4,515 | $46,357 | $890,546 |
| 2022 | 4,601 | $43,680 | $864,253 |
| 2021 | 4,735 | $35,696 | $791,599 |
| 2020 | 4,197 | $38,078 | $765,115 |
| **TOTAL** | | **$207,275** | |

190. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $207,275.

**14. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting another Dental/Vision Insurance Plan**

191. At all relevant times, Aon acted as a fiduciary by administering and selecting another dental/vision voluntary insurance policy available to participants in the Plan.

192. From 2020 to 2024, UnitedHealthcare Insurance Company was the insurance carrier for Aon's other dental/vision voluntary insurance policy in the Plan.

193. Since 2020, commissions and administration fees were paid from the employee paid premiums for the dental/vision voluntary insurance policy.

194. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon Insurance Agency LLC received commissions and administration fees for the dental/vision voluntary benefits plan in the Plan.

| **Plan Year** | **Dental, Vision - UnitedHealthcare Plan Participant** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| **Dental** | | | | | |
| 2024 | 1,077 | $46,558 | $0 | $46,558 | $1,093,410 |
| 2023 | 808 | $30,097 | $0 | $30,097 | $797,991 |
| 2022 | 625 | $16,264 | $0 | $16,264 | $551,757 |
| **Vision** | | | | | |
| 2024 | 2,224 | $57,143 | $0 | $57,143 | $1,289,837 |
| 2023 | 1,054 | $9,053 | $0 | $9,053 | $182,626 |
| 2022 | 1,007 | $7,711 | $0 | $7,711 | $155,742 |
| **Dental/ Vision/ Health** | | | | | |
| 2021 | 1,455 | $20,915 | $0 | $20,915 | $29,694,557 |
| 2020 | 4,861 | $17,030 | $461,487 | $478,517 | $20,856,648 |
| **TOTAL** | | **$204,771** | **$461,487** | **$666,258** | |

195. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $204,771 and the total administration fees were $461,487.

### 15. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting another Vision Insurance Plan

196. At all relevant times, Aon acted as a fiduciary by administering and selecting another vision voluntary insurance policy available to participants in the Plan.

197. From 2020 to 2024, Eyemed Vision Care was the insurance carrier for Aon's other vision voluntary insurance policy in the Plan.

198. Since 2020, commissions were paid from the employee paid premiums for the other vision voluntary insurance policy.

199. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon Insurance Agency LLC and Hewitt Insurance Brokerage LLC received commissions for the vision voluntary benefits plan in the Plan.

| **Plan Year** | **Vision - Eyemed Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 6,132 | $19,491 | $550,509 |
| 2023 | 1,686 | $12,591 | $257,223 |
| | 2,341 | $7,485 | $138,711 |
| | 2,174 | $1,465 | $26,979 |
| 2022 | 1,768 | $12,070 | $246,106 |
| | 2,163 | $6,259 | $128,060 |
| | 2,095 | $1,382 | $27,654 |
| 2021 | 1,732 | $13,768 | $236,120 |
| | 1,717 | $5,707 | $99,409 |
| | 2,106 | $1,713 | $29,729 |
| 2020 | 2,088 | $11,117 | $248,668 |
| | 1,533 | $3,936 | $86,632 |
| | 1,957 | $1,159 | $26,018 |
| **TOTAL** | | **$98,143** | |

200. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $98,143.

### 16. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Accidental Death & Dismemberment Plan

201. At all relevant times, Aon acted as a fiduciary by administering and selecting the accidental death and dismemberment voluntary insurance policy available to participants in the Plan.

202. From 2020 to 2024, Hartford Life and Accident was the insurance carrier for Aon's accidental death and dismemberment voluntary insurance policy in the Plan.

203. Since 2020, commissions were paid from the employee paid premiums for the accidental death and dismemberment insurance policy to Aon Insurance Agency LLC and Hewitt Insurance Brokerage LLC. Administration fees were paid to Aon Consulting and Aon Risk Services Central Inc.

204. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon and/or its affiliates received commissions and administration fees for the accidental death and dismemberment voluntary benefits plan in the Plan.

| **Plan Year** | **AD&D - Hartford Life Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 18,105 | $15,181 | $12,845 | $28,026 | $3,320,733 |
| 2023 | 13,000 | $17,668 | $12,491 | $30,159 | $3,817,093 |
| 2022 | 39,547 | $13,875 | $10,195 | $24,070 | $2,926,577 |
| 2021 | 7,636 | $12,222 | $0 | $12,222 | $3,409,982 |
| 2020 | 12,716 | $12,995 | $0 | $12,995 | $3,223,940 |
| **TOTAL** | | **$71,941** | **$35,531** | **$107,472** | |

205. The total amount of commissions to Aon or its affiliates from 2020 through 2024 were $71,941 and the total administration fees were $35,531.

### 17. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting Another Accidental Death & Dismemberment Insurance Plan

206. At all relevant times, Aon acted as a fiduciary by administering and selecting another accidental death & dismemberment voluntary insurance policy available to participants in the Plan.

207. From 2020 to 2023, Ace American Insurance Company was the insurance carrier for Aon's other accidental death & dismemberment voluntary insurance policy in the Plan.

208. Since 2020, commissions were paid from the employee paid premiums for the accidental death & dismemberment voluntary insurance policy.

209. As demonstrated in the table below, and starting in 2020 and continuing to 2023, Aon received commissions for the accidental death & dismemberment voluntary benefits plan in the Plan.

| **Plan Year** | **AD&D - Ace American Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2023 | 20,930 | $10,225 | $69,357 |
| 2022 | 13,442 | $10,225 | $69,357 |
| 2021 | 13,442 | $7,215 | $48,945 |
| 2020 | unknown | $8,710 | $59,631 |
| **TOTAL** | | **$36,375** | |

210. The total amount of commissions to Aon from 2020 through 2023 were $36,375.

### 18. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Employee Assistance Plan

211. At all relevant times, Aon acted as a fiduciary by administering and selecting the employee assistance voluntary insurance policies available to participants in the Plan.

212. From 2020 to 2022, United Behavioral Health DBA Optum was the insurance carrier for Aon's employee assistance voluntary insurance policies.

213. Aon Consulting collected commissions from the premiums paid by participants in the plan during that period of time.

214. The table below demonstrates the total commissions paid to Aon for the employee assistance voluntary insurance policy.

| **Plan Year** | **Employee Assistance - United Behavioral Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2022 | 14,008 | $7,549 | $301,941 |
| 2021 | 13,637 | $8,138 | $325,524 |
| 2020 | 13,358 | $6,130 | $245,191 |
| **TOTAL** | | **$21,817** | |

215. The total amount of commissions paid to Aon or its affiliates from 2020 through 2022 were $21,817.

**19. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Supplemental Disability Plan**

216. From 2020 to 2024, The Paul Revere Life Insurance Company was the insurance carrier for Aon's supplemental disability voluntary insurance policies.

217. Aon Consulting collected commissions from the premiums paid by participants in the plan during that period of time.

218. The table below demonstrates the total commissions paid to Aon and/or its affiliates for the supplemental disability voluntary insurance policy.

| **Plan Year** | **Supp. Disability - Paul Revere Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 69 | $2,948 | $58,945 |
| 2023 | 73 | $3,154 | $63,055 |
| 2022 | 85 | $3,057 | $61,118 |

| | | | |
|---|---|---|---|
| 2021 | 99 | $4,500 | $90,032 |
| 2020 | 115 | $4,895 | $98,275 |
| **TOTAL** | | **$18,554** | |

219. The total amount of commissions paid to Aon or its affiliates from 2020 through 2024 were $18,554.

### 20. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting Another Dental Plan

220. At all relevant times, Aon acted as a fiduciary by administering and selecting another dental voluntary insurance policy available to participants in the Plan.

221. From 2020 to 2024, Alpha Dental Programs, Inc. was the insurance carrier for Aon's other dental voluntary insurance policy in the Plan.

222. Since 2020, commissions were paid from the employee paid premiums for the dental voluntary insurance policy.

223. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Aon Insurance Agency LLC or Hewitt Insurance Brokerage LLC received commissions for the dental voluntary benefits plan in the Plan.

| Plan Year | Dental - Alpha Plan Participants | Amt. Commissions Paid | Total Premium |
|---|---|---|---|
| 2024 | 288 | $2,164 | $54,388 |
| 2023 | 301 | $2,546 | $63,662 |
| 2022 | 328 | $1,811 | $60,368 |
| 2021 | 282 | $1,636 | $54,524 |
| 2020 | 283 | $1,705 | $56,834 |
| **TOTAL** | | **$9,862** | |

224. The total amount of commissions paid to Aon or its affiliates from 2020 through 2024 were $9,862.

### 21. Aon Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting Another Dental Plan

225. At all relevant times, Aon acted as a fiduciary by administering and selecting another dental voluntary insurance policy available to participants in the Plan.

226. From 2020 to 2024, Safeguard Health Plans, Inc., A California Corporation was the insurance carrier for Aon's other dental voluntary insurance policy in the Plan.

227. Since 2020, commissions were paid from the employee paid premiums for the dental voluntary insurance policy.

228. As demonstrated in the table below, and starting in 2020 and continuing to 2024, Hewitt Insurance Brokerage LLC received commissions for the dental voluntary benefits plan in the Plan.

| Plan Year | Vision - Eyemed Plan Participants | Amt. Commissions Paid | Total Premium |
|---|---|---|---|
| 2024 | 14 | $74 | $1,898 |
| | 25 | $157 | $3,749 |
| | 7 | $57 | $1,340 |
| 2023 | 8 | $52 | $1,281 |
| | 24 | $149 | $3,918 |
| | 13 | $81 | $2,044 |
| 2022 | 8 | $52 | $1,281 |
| | 12 | $65 | $2,028 |
| | 13 | $47 | $1,720 |
| 2021 | 19 | $124 | $4,063 |
| | 39 | $168 | $5,440 |
| | 23 | $100 | $2,875 |
| **TOTAL** | | **$1,126** | |

229. The total amount of commissions paid to Aon or its affiliates from 2020 through 2024 were $1,126.

### 22. Aon and/or Its Affiliates Collected Millions of Dollars in Commissions and Administration Fees from Plan Participants During the Class Period

230. The table below demonstrates the total amount of commissions and administration fees Aon or its affiliates received from the premiums paid by its employees who chose to participate in the various voluntary benefits plans in the Plan.

| Plan Year | Total Commissions Paid | Total Administration Fees Paid | Total Commissions and Administration Fees Paid |
|---|---|---|---|
| 2020 | $3,463,606 | $1,020,398 | $4,484,004 |
| 2021 | $3,498,534 | $574,866 | $4,073,400 |
| 2022 | $1,640,469 | $289,368 | $1,929,837 |
| 2023 | $1,398,752 | $135,352 | $1,534,104 |
| 2024 | $2,316,021 | $496,824 | $2,812,845 |
| **TOTAL** | **$12,317,382** | **$2,516,808** | **$14,834,190** |

231. Aon violated 29 U.S.C. § 1106(b)(1) by dealing with the assets of the Plan in its own interest or for its own account when it caused or allowed the payment of commissions and administration fees to itself derived from participant-paid premiums that were Plan assets or derived from transactions involving Plan assets.

232. Aon violated 29 U.S.C. § 1106(b)(2) by acting in a transaction involving the Plan on behalf of a party whose interests were adverse to the interests of the Plan or its participants and beneficiaries, including insurers and other parties dealing with the Plan from whom Aon received compensation tied to participant-paid premiums.

233. Aon violated 29 U.S.C. § 1106(b)(3) by receiving consideration for its own personal account from parties dealing with the Plan in connection with transactions involving the assets of the Plan, including commissions and administration fees paid by insurance carriers and/or embedded in participant-paid premiums.

234. Aon's receipt and retention of commissions and other consideration were not subject to any exemption applicable to fiduciaries engaged in self-dealing prohibited by § 1106(b), and, in any event, were not properly authorized, disclosed, or structured to satisfy ERISA's requirements.

235. Aon's conduct was knowing, willful, or at least reckless, and undertaken in disregard of its fiduciary obligations of loyalty, resulting in excessive and undisclosed compensation and harm to the Plan and its participants.

236. As a direct and proximate result of Aon's conduct, Plaintiffs and the Plan suffered losses, including but not limited to excessive charges embedded in premiums, diminished Plan and participant assets, and the loss of value and loyalty owed by a fiduciary operating free of self-dealing.

**COUNT I**
**Prohibited Transactions and Self-Dealing in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)**
**(against Aon)**

237. Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

238. Aon, as a fiduciary to the Plan, were strictly prohibited from engaging in the self-dealing transactions enumerated under 29 U.S.C. § 1106(b).

239. Aon violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) by dealing with the assets of the Plan in Aon's own interest and for its own corporate account. Specifically, Aon used its fiduciary power to authorize and mandate premium rate deductions from its employees' wages that were mathematically designed to contain and fund Aon's own self-dictated corporate commission and fee margins.

240. Aon violated ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2) by acting in transactions involving the Plan on behalf of parties whose interests were adverse to the Plan, its participants,

and beneficiaries. Specifically, Aon acted on behalf of Aon's own corporate brokerage and consulting arms – and the complicit insurance carriers – to secure high-margin corporate commission revenues, creating a direct, structural conflict with its fiduciary obligation to secure the lowest possible premium costs for its employees.

241. Aon, violated ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) by receiving substantial consideration for its own personal account from third-party insurance carriers dealing with the Plan in connection with transactions involving Plan assets.

242. As a result of these violations, Aon is strictly liable under 29 U.S.C. § 1132(a)(2) and/or (a)(3) for appropriate equitable relief, including restitution, disgorgement of all compensation and profits, surcharge, and injunctive and other equitable relief.

**COUNT II**
**Breaches of Fiduciary Duty of Loyalty**
**(against All Defendants)**

243. Plaintiffs reallege and incorporate by reference the foregoing allegations.

244. As fiduciaries of the Plan, Defendants breached their fiduciary duty of loyalty by placing Aon's own interests in receiving commissions ahead of the interests of the Plan and its participants, failing to avoid prohibited conflicts, and failing to act solely in the interest of participants and beneficiaries for the exclusive purpose of providing benefits and defraying reasonable plan administrative expenses.

245. As fiduciaries of the Plan, Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

246. Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive

purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

247. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

248. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

249. Plaintiffs seek equitable relief under 29 U.S.C. § 1132(a)(2) and/or (a)(3), including restitution, disgorgement, surcharge, injunctive relief, removal of Defendants from any fiduciary role, appointment of an independent fiduciary, accounting, and other appropriate equitable remedies.

**COUNT III**
**Failure to Adequately Monitor Other Fiduciaries**
**(against Aon)**

250. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

251. Aon (the "Monitoring Defendant"), had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and were aware that the Committee had critical responsibilities as fiduciaries of the Plan.

252. In light of this authority, the Monitoring Defendant had a duty to monitor the Committee to ensure that the Committee was adequately performing its fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committee was not fulfilling those duties.

253. The Monitoring Defendant also had a duty to ensure that the members of the Committee possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions, and reported regularly to the Company.

254. The Monitoring Defendant breached its fiduciary monitoring duties by, among other things, failing to monitor and evaluate the performance of the Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee's imprudent actions and omissions.

255. As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars in losses. Had the Monitoring Defendant complied with its fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

256. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendant is liable to restore to the Plan all losses caused by its failure to adequately monitor the Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in their Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C. A Declaration that the Defendant has breached its fiduciary duties under ERISA;

D. An Order compelling the Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of its fiduciary duties, and to restore to the Plan all profits the Defendant made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendant had fulfilled its fiduciary obligations;

E. An order requiring the Company to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, as necessary to effectuate said relief, and to prevent the Company's unjust enrichment;

F. Actual damages in the amount of any losses the participants suffered, to be allocated among the participants in proportion to their losses;

G. An order enjoining Defendant from any further violations of its ERISA fiduciary responsibilities, obligations, and duties;

H. Other equitable relief to redress the Company's illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J. An award of costs pursuant to 29 U.S.C. § 1132(g);

K. An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L. Such other and further relief as the Court deems equitable and just.

Dated: October 23 2026 Respectfully submitted,

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
PA Attorney ID #88587
James A. Maro, Esquire
PA Attorney ID #86420
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
jamesm@capozziadler.com
Tel.: (610) 890-0200
Fax: (717) 232-3080

*Counsel for Plaintiff and the Putative Class*